**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

L.R.L., *a minor, by his mother and next*
*Friend* SHANTEL LOMAX

          Plaintiffs,

          v.

DISTRICT OF COLUMBIA,

          Defendant.

Civil Action No. 11-883  (BAH/AK)

Judge Beryl A. Howell

---

**MEMORANDUM OPINION**

Pending before the Court are objections filed by the defendant District of Columbia to Magistrate Judge Alan Kay's Report and Recommendation, which recommended denial of the defendant's motion for summary judgment and grant of summary judgment to the minor plaintiff, L.R.L., who is represented in this action by his mother Shantel Lomax ("plaintiff"). ECF No. 19 ("MJ Report").  The defendant objects that the Magistrate Judge improperly construed 20 U.S.C. § 1415(b)(6) of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, to permit a student to bring a due process complaint for compensatory education against a local education authority ("LEA"), with which the student was formerly enrolled, after the student had moved to a new LEA.  For the reasons set forth below, the Court adopts the Magistrate Judge's Report and Recommendation and hereby GRANTS the plaintiffs' Motion for Summary Judgment and DENIES the defendant's Motion for Summary Judgment.

**I.      BACKGROUND**

The factual and procedural background for this matter is set forth in detail in the Magistrate's Report and, thus, will be summarized only briefly here.  As set forth in the

administrative record, and undisputed in the parties' statements of facts, the plaintiff first

requested special education services under the IDEA from the defendant's Early Stages

Center on March 4, 2009, when L.R.L. was three years old.  Administrative Record ("AR") at

11, ECF No. 11; Def.'s Statement of Undisputed Facts ("Def.'s Facts") at 23 ¶ 1, ECF No. 13.

For some time before this date, L.R.L. showed signs of poor behavior and low functioning in a

private day care facility.  AR at 11.  Three evaluations conducted at the Children's National

Medical Center ("CNMC") in 2007, 2008, and early 2009 corroborated that L.R.L. had severe

developmental, speech, and language deficits.  *Id.*

Between March 2009 and July 20, 2009, DCPS evaluated L.R.L. and determined that he

was eligible under the IDEA.[1]  DCPS further provided him with an individualized education

program ("IEP") for the 2009–2010 school year, when L.R.L. would be a four-year-old student.[2]

AR at 11-13; Def.'s Facts ¶¶ 3-6.  Also, on July 20, 2009, DCPS notified the plaintiff that she

should enroll L.R.L. at his neighborhood public school, Emery Elementary School, for

kindergarten.  AR at 13; Def.'s Facts ¶ 8; Pl.'s Statement of Material Facts ("Pl.'s Facts") ¶ 4,

ECF No. 12-3.  When the plaintiff tried to enroll L.R.L. at the school, however, she was rejected

and DCPS did not provide an alternative placement.  AR at 13.  Consequently, for the 2009–10

school year, the plaintiff "was forced to register" L.R.L. at Community Academy Public Charter

School ("CAPCS"), which is located within the District of Columbia and acts as its own LEA for

the purposes of the IDEA.[3]  AR at 13; Def.'s Facts ¶ 9.

---

[1] As part of its evaluation, DCPS performed speech and language, developmental and occupational therapy assessments.  Def.'s Facts ¶ 3–4.  Nonetheless, the plaintiff's due process complaint alleges that DCPS "failed to fully and comprehensively evaluate [L.R.L.] in all areas of his disability."  AR at 12.

[2] The IEP developed by DCPS for L.R.L. in July, 2009 prescribed five hours per week of specialized instruction, one hour per week of occupational therapy, one hour per week of speech and language services, and thirty minutes per week of counseling services.  AR 12–13; Def.'s Facts ¶ 7.

[3] DCPS is the other relevant LEA for purposes of this case.

2

Upon L.R.L.'s enrollment, CAPCS implemented the original IEP devised by DCPS but found that L.R.L. needed further assistance.  AR at 13.  In accordance with the DCPS IEP, CAPCS provided L.R.L. one hour per week of speech and language services, one hour per week of occupational therapy services, and thirty minutes per week of behavioral support services, but increased L.R.L.'s services from five to twenty hours per week of specialized instruction and, while not prescribed in the DCPS IEP at all, provided L.R.L with a dedicated aide to assist with his behavior.  *Id.*  L.R.L. continued to attend CAPCS during the 2010–11 school year.  *Id*.

Mid-way through the 2010-11 school year, on January 27, 2011, the plaintiff filed a due process complaint against DCPS alleging that L.R.L. had been denied a free appropriate public education ("FAPE") due to the defendant's failure (1) to identify L.R.L. pursuant to the District's Child Find obligations, (2) to evaluate L.R.L. timely, fully, and comprehensively in all areas of his disability; (3) to develop an appropriate IEP for L.R.L. for the 2009–2010 school year, and (4) to provide an appropriate or accessible educational placement for the 2009–2010 school year.  AR at 13–14.  The plaintiff requested relief of compensatory education through placement and funding in a private, full-time special education school.  AR at 14.

The matter was referred to a Hearing Officer, who dismissed the complaint less than a month after the complaint was filed and before holding the due process hearing.  AR at 3 (Hearing Officer Determination ("HOD")).  The Hearing Officer acknowledged the plaintiff's argument that enrollment in CAPCS "would not have been necessary if [DCPS] had not denied the Student a FAPE," and conceded that she "took a totally appropriate approach when faced [with] what she perceived to be inadequacies in the Student's education program" and "enrolled him in a public charter school."  AR at 2 (HOD).  Nevertheless, the Hearing Officer concluded, "as a matter of law," that L.R.L. was a "LEA child" of CAPCS and not of DCPS, within the meaning of applicable District of Columbia Municipal Regulations, "because the Student does

3

not currently attend any of the [DCPS]'s schools, did not attend any of the [DCPS]'s schools when the hearing was requested, and was not placed in another LEA by the [DCPS]." AR at 2 (HOD). The Hearing Officer reasoned that the purpose of IDEA is to ensure that students with disabilities are receiving a FAPE, something which L.R.L. is presumably receiving at CAPCS and, therefore, the plaintiff was precluded under D.C. Municipal Regulations, Title 5-E, § 3029.1, from seeking a remedy against DCPS. AR at 1–2 (HOD).

The plaintiff thereafter filed the instant lawsuit, on May 12, 2011, challenging the Hearing Officer's dismissal of her due process complaint. The Court referred the case to the Magistrate Judge for full case management, pursuant to Local Civil Rule 72.3(a). Order, dated Oct. 19, 2011, ECF No. 8. Following the filing of the administrative record and cross motions for summary judgment, the Magistrate Judge issued his Report and Recommendation ("R&R") on April 19, 2012, ECF No. 19, recommending denial of the defendant's motion, grant of the plaintiff's motion, reversal of the Hearing Officer's Dismissal Order and remand to the Hearing Officer for further proceedings. R&R at 9. The defendant filed timely objections, ECF No. 20, which are currently before the Court.

## II.    STANDARDS OF REVIEW

### A.    *De Novo* Review of Magistrate Judge's Report and Recommendation

When, as here, the Court has referred a case for full case management, the Magistrate Judge determines all motions and matters that arise in the case, except for those matters specified in Local Civil Rule 72.3, for which the Magistrate Judge will report proposed findings of fact and a recommendation for disposition. LCvR 72.3. This Local Civil Rule is consistent with Federal Rule of Civil Procedure 72(b), which provides for the referral of a pretrial matter "dispositive of a claim or defense" to a Magistrate Judge to hear and make a "recommended disposition." FED. R. CIV. P. 72(b); *see also* LCvR 72.3(a)(3) ("At the request of the district

4

judge to whom the case is assigned, a magistrate judge may . . . submit . . . proposed findings of

fact and recommendations for the disposition of . . . motions for summary judgment . . . .").

Upon submission of the Magistrate Judge's recommended disposition, a "district judge shall

make a *de novo* determination of those portions of a magistrate judge's findings and

recommendations to which [an] objection is made," based upon the record before the Magistrate

Judge or based upon further evidence that the district judge may receive in a new heearing.

LCvR 72.3(c); *see also Davis v. U.S. Dep't of Labor*, 844 F. Supp. 2d 92, 95 n.3 (D.D.C. 2012)

("Review under Local Civil Rule 72.3 would require a more searching analysis under the *de*

*novo* standard."); *Brodie v. Worthington*, No. 09-1828, 2011 U.S. Dist. LEXIS 107422, at *3 n.2

(D.D.C. Sept. 21, 2011) (same).

### B.   Summary Judgment Standard of Review of IDEA Hearing Officer Decision

The parties in this case are seeking cross-motions for summary judgment based upon the

administrative record available to an IDEA Hearing Officer. [4]   The IDEA "establishes various

procedural safeguards that guarantee parents both an opportunity for meaningful input into all

decisions affecting their child's education and the right to seek review of any decisions they think

inappropriate." *District of Columbia v. Doe*, 611 F.3d 888, 890 (D.C. Cir. 2010) (quoting *Honig*

*v. Doe*, 484 U.S. 305, 311–12, (1988)).   Any party aggrieved by a decision of a due process

hearing officer under the IDEA may appeal the findings and decision to any state court or a

United States district court.   20 U.S.C. § 1415(i)(2).   The party challenging the administrative

decision has the burden of proving deficiencies in the administrative decision by a

preponderance of the evidence.   20 U.S.C. § 1415(i)(2)(C)(iii).   When evaluating an appeal of an

administrative decision, a court "(i) shall receive the records of the administrative proceedings;

---

[4] The plaintiff supplemented the record with psychological and other evaluations of L.R.L. conducted in January and February, 2011, that were not part of the administrative record.  Pl.'s Mot. Summ. J. Ex. A, ECF No. 12-5.  The Court does not rely on this supplemental material in deciding the pending motions for summary judgment.

(ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "Federal courts have interpreted 'appropriate relief' to include compensatory education as an equitable remedy to be granted upon finding that a child has been denied FAPE under the Act." *Flores v. District of Columbia*, 437 F. Supp. 2d 22, 30 (D.D.C. 2006) (quoting *Diatta v. District of Columbia*, 319 F. Supp. 2d 57, 64 (D.D.C. 2004)).

Although seeking judicial review of an administrative agency's decision by way of a summary judgment motion "is permissible under the IDEA, it is not a true summary judgment procedure. Instead, the district court essentially conduct[s] a bench trial based on a stipulated record." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993); *see also S.B. v. District of Columbia*, 783 F. Supp. 2d 44, 50 (D.D.C. 2011) ("As no new evidence has been submitted here, the Court will treat the parties' cross motions for summary judgment as motions for judgment based on the administrative record."). In other words, rather than applying the typical standard applicable to a summary judgment motion, which may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994), the Court in an IDEA case conducts a summary adjudication. *Phillips v. District of Columbia*, 736 F. Supp. 2d 240, 246 (D.D.C. 2010) ("If no additional evidence is introduced by the parties in a civil suit seeking review of an administrative decision, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record.") (alterations and internal quotation marks omitted) (quoting *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C. 2005)); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 66–67 (D.D.C. 2005); *see also Hanson v. Smith*, 212 F. Supp. 2d

474, 480–81 (D. Md. 2002).

The court must resolve factual disputes based upon its own *de novo* review of the record and evaluation of the preponderance of the evidence, giving "due weight" to the factual findings of the IDEA Hearing Officer, depending upon the thoroughness and reasonableness of the administrative proceedings.  *See Doe*, 611 F.3d at 897; s*ee also Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003)).  Where, as here, the administrative decision to reject the parent's claim for a due process hearing was predicated solely on the Hearing Officer's legal interpretation of applicable law, without consideration otherwise of the merits of the plaintiff's due process complaint, that decision is entitled to no deference since "the court draws its own legal conclusions de novo."  *Alexis v. Bd. of Educ.*, 286 F. Supp. 2d 551, 556 (D. Md. 2003) ("The hearing officer's conclusions of law, however, merit no such deference.").

III.    **DISCUSSION**

At the outset, the Court notes that the issue presented is not the plaintiff's substantive claim whether L.R.L. has been denied a FAPE such that the defendant should be made to provide compensatory education as a remedy.  Rather, the issue is whether the plaintiff has "the right to a hearing" on a claim for compensatory education against a LEA when the student is no longer enrolled in the LEA from which redress is sought.  *See AR at 2 (HOD).  The defendant contends that the Hearing Officer correctly ruled that the IDEA "prevents a due process complaint against a former LEA by a student enrolled in a subsequent LEA."  Def.'s Objection at 2, ECF No. 20. For the reasons set forth below, the Court disagrees and finds, consistent with the R&R, that dismissal of L.R.L.'s due process complaint was legal error.

The defendant characterizes this issue as one of "first impression in this Circuit," and objects that the Magistrate Judge's recommendation improperly construed the applicable

statutory and regulatory provisions. *Id.* at 1–2. Specifically, the defendant argues that when 20 U.S.C. § 1415(b)(6) of the IDEA, which requires an LEA to provide an opportunity to challenge IDEA matters, is read in context with other IDEA provisions and "in conjunction with D.C. Mun. Regs. Title 5 3029.1, it is clear that a parent may only bring a due process complaint against their current LEA, not their former LEA." *Id.* at 2. The Court first considers the defendant's objections to the Magistrate Judge's construction of the applicable statute and then turns to the case law from other jurisdictions addressing this issue.

A.   **Contrary to Defendant's Position, 20 U.S.C. § 1415 and Municipal Regulations Do Not Restrict Due Process Complaints to a Student's Current LEA**

The defendant argues vehemently that a due process "complaint can only be filed against the LEA that is currently providing the student with an educational placement," *id.* at 4, based upon (1) a plain reading of 20 U.S.C. § 1415(a) and (b)(6), and D.C. Municipal Regulation, Title 5-E § 3029.1; (2) the operation of related IDEA provisions, including procedures for the due process hearing under 20 U.S.C. § 1415(c)(2)(B), the resolution process under § 1415(f), and the "stay-put" provision under § 1415(j); and (3) the public policy against permitting a current LEA to avoid its statutory responsibility to provide the student a FAPE by allowing suit against a former LEA. The merits of these objections are addressed *seriatim* below.

1.   *20 U.S.C. § 1415(a) and (b)(6) and D.C. Municipal Regulation, Title 5-E § 3029.1*

The defendant correctly notes that construction of a statute begins with its plain and unambiguous meaning, in the context of the overall statutory scheme. *Id.* at 2 (citing *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) and *United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002)); *see also Friends of Blackwater v. Salazar*, 2012 U.S. App. LEXIS 17304, at *33, 40 (D.C. Cir. Aug. 17, 2012) ("As in all statutory construction

cases, the court must begin with the language of the statute [and] must not confine itself to examining a particular statutory provision in isolation." (citations and internal quotation marks omitted)). The IDEA scheme, in brief, requires that states and LEAs receiving federal educational assistance establish "policies and procedures to ensure," among other things, that a "free appropriate public education," or "FAPE," is available to disabled children. 20 U.S.C. § 1412(a)(1)(A); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005). The D.C. Circuit has stressed that

> School districts may not ignore disabled students' needs, nor may they await parental demands before providing special instruction. Instead, school systems must ensure that all children with disabilities residing in the State . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated.

*Reid*, 401 F.3d at 518–19 (internal quotation mark omitted) (citing 20 U.S.C. § 1412(a)(3)(A)). To ensure a FAPE, the law further requires that an "individualized education program," or "IEP," be developed, pursuant to 20 U.S.C. §§ 1412(a)(4) and 1414(d), that sets out a disabled child's individually tailored goals and the means of achieving them. *Doe*, 611 F.3d at 892 n.5. Furthermore, if no public school is available to provide sufficient support services to ensure a FAPE for the child, then the school system "must pay the costs of sending the child to an appropriate private school." *Reid*, 401 F.3d at 518–19 (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991)); *Branham v. Gov't of the District of Columbia*, 427 F.3d 7, 8–9 (D.C. Cir. 2005). Finally, where an LEA with responsibility for providing a FAPE has failed to comply with procedural safeguards guaranteed to both a disabled student and his or her parents, or failed to provide a FAPE, then the student and the parents are authorized, following exhaustion of administrative remedies, to seek relief in federal district court. 20 U.S.C. § 1415(i)(2)(A). The district court has broad discretion to "grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C).

According to the defendant, the IDEA provision requiring an LEA to establish and maintain procedures ensuring "children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies," *id.* § 1415(a), applies only to the LEA "required to provide a FAPE." Def.'s Objection at 2–3. Citing the purpose of the IDEA set forth in 20 U.S.C. § 1400(d), "to ensure that all children with disabilities have available to them a [FAPE]," the defendant contends that the statute's use of the "present tense" ensures "that children with disabilities have in the present tense, not had in the past tense, FAPE available to them." *Id.* at 3.

The defendant's argument is specious. Of course, the overarching purpose of the IDEA is to provide a current FAPE to students with disabilities, but the defendant's focus on the present tense of the language ignores the broad remedial reach of the law. The IDEA sets forth stringent procedural safeguards to permit disabled children and their parents to seek redress from an LEA that is currently or has *in the past*, failed to fulfill its statutory responsibilities. Indeed, to remedy past failures, district courts have broad power to grant equitable relief, including compensatory relief, to remedy past failures by an LEA. *Reid,* 401 F.3d at 518 ("[C]ompensatory awards should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA."). Thus, LEAs have been required to provide compensatory relief to vindicate a student's substantive right to receive a FAPE and to compensate the student for past deprivations of educational opportunity, including where the student is no longer eligible for IDEA benefits. *See, e.g.*, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 55 (2005) (claim seeking reimbursement for past education expenses is not moot even if the student has graduated from high school); *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 5 n.3 (1993) (lawsuit in which plaintiff sought IDEA reimbursement, even though he had already graduated from high school, was not moot); *Ferren C. v. Sch. Dist.*, 612

F.3d 712, 718 (3d Cir. 2010) ("[I]ndividual over [age 21] is still eligible for compensatory education for a school district's failure to provide a FAPE prior to the student turning twenty-one.  A court may grant compensatory education in such cases through its equitable power . . . ." (citation omitted)); *Garcia v. Bd. of Educ.*, 520 F.3d 1116, 1124 (10th Cir. 2008) ("[E]ven if a student is ineligible going forward under IDEA, seeking backward-looking relief to make up for past deprivations also seems entirely appropriate.").  It would turn the statutory purpose on its head to exempt from the "guaranteed procedural safeguards" and obligation to provide a FAPE, any LEA that has so failed in fulfilling its statutory responsibilities that a parent is forced to remove a disabled child to another LEA.  In fact, the IDEA contemplates the possibility of such failing LEAs and, for example, requires an LEA to provide tuition reimbursement as compensation when a parent enrolls a disabled child in a private school due to the LEA's deficiencies in providing a FAPE.  *See* 20 U.S.C. § 1412(a)(10).

Similarly, 20 U.S.C. § 1415(b)(6) does not restrict a due process challenge to the current LEA, as the defendant urges.  This IDEA provision requires that an LEA provide "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or education placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6)(A).  The provision does not indicate that the "matter" must pertain to activities of the current LEA, and thereby limit the respondent in a due process complaint to the current LEA.  On the contrary, the only restriction contained in this statutory provision is a limitations period that the due process complaint must "set[] forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or . . . in such time as the State law allows, [with certain] exceptions."  *Id.* § 1415(b)(6)(B).  In other words, any LEA that provided services under the IDEA within two years (or as provided by the State

limitations period) of the filing of the due process complaint may be called upon to respond to deficiencies in those services.  Thus, this provision simply cannot be read to limit due process challenges against a former LEA when the challenge is filed within the limitations period allowed by the statute or State law.

The defendant further argues that the D.C. Municipal Regulation, Title 5-E § 3029.1 supports its position that a due process complaint may only be filed against a single LEA with the current responsibility of providing a FAPE to the complaining student.  Def.'s Objection at 3. This regulation implements the procedural safeguards for an impartial due process hearing statutorily required by 20 U.S.C. § 1415(a), (b)(6) and (f), and provides that:

> A parent of a LEA child or the LEA has the right to initiate a hearing, when there is a dispute about the eligibility, identification, evaluation, educational placement, or the provision of FAPE to a child with a disability, in accordance with 20 U.S.C. § 1415(f).

D.C. MUN. REGS. tit. 5-E, § 3029.1 (2012).

The defendant points to "[u]se of the singular 'the LEA'," in this regulation as an indication that it bars "claims against multiple parties, or that both former and current LEAs could initiate a hearing under the regulation."  Def.'s Objection at 3.  The defendant rests its argument on too weak an article, definite though it may be.  The only import of the designation in the regulation of "*the* LEA" is that only the LEA that is involved in "a dispute about . . . the provision of FAPE," has the right to be named in a due process complaint or to initiate such a complaint.  This regulation does not specify, however, when the due process complaint must be filed and, thus, is not limited only to an LEA when the student is currently enrolled there.  As the Magistrate Judge correctly noted, "if the District of Columbia wanted to limit parties' ability to initiate hearings, it could have added language to the Regulation to that extent."  R&R at 7.

The defendant's cramped construction of D.C. Municipal Regulation, Title 5-E § 3029.1

is also not supported by review of the evolution of these regulations.  This provision was enacted

for the first time in 2003 as part of a comprehensive revision of the special education chapter in

title 5 of the D.C. Municipal Regulations.  *See* Notice of Final Rulemaking, Feb. 28, 2003, 50

D.C. Reg. 1854 (replacing "Chapter 30 of the Board Rules, Title 5 of the D.C. Municipal

Regulations regarding special education" with new Chapter 30).  At the same time, new Chapter

30 also included other regulations that expressly contemplated the involvement of more than a

single LEA in the provision of a FAPE to a student.  *Id.*  For example, the 2003 regulations

provided that when a disabled child is enrolled in "more than one LEA during the applicable

period for assessment and placement, the LEAs are jointly responsible for the child's evaluation

and, if necessary, IEP and placement."  D.C. MUN. REGS. tit. 5-E § 3019.6 (2003).  It follows that

should both LEAs fall short of fulfilling their joint responsibility, both would be subject to due

process complaints under D.C. Municipal Regulation, Title 5-E § 3029.1.  Indeed, the 2003

regulations required LEA Charter schools to provide their own representation at due process

hearings involving children enrolled at their school "unless implementation of the . . . decision is

the responsibility of DCPS as a result of any actions or inactions of DCPS while a child had been

enrolled at an LEA Charter," suggesting that DCPS could be involved at a due process hearing

for a child enrolled in an LEA charter school.  D.C. MUN. REGS. tit. 5-E § 3019.13 (2003).  In

short, these provisions enacted at the same time as § 3029.1 make clear that the defendant reads

too much into the words "the LEA" as limiting the right to a due process hearing only to a single,

current LEA.

      **2.**     ***The Operation of Other IDEA Provisions Does Not Restrict Due Process Complaint to Current LEA***

      The defendant turns to several other IDEA provisions to bolster its argument that

allowing a due process challenge against a former LEA "does not make sense."  Def.'s Objection

at 4.  In particular, the defendant notes that, under the IDEA, an LEA facing a due process

challenge is required to send a prior written notice about whether it proposes or refuses to take an

action, 20 U.S.C. § 1415(c)(1)(B), and participate in a resolution process with members of the

student's IEP Team, 20 U.S.C. § 1415(f)(1)(B).  This IEP Team is required to include certain

individuals, such as the student's current regular and special education teacher.  20 U.S.C.

§ 1414(d)(1)(B).  According to the defendant, a former LEA would be unable to comply with

these requirements because it cannot "require the new LEA's IEP team to take any action with

respect to the current provision of FAPE to the child" nor require the attendance at the required

resolution meeting with teachers "employed by another LEA."  Def.'s Objection at 5.  This leads

the defendant to the conclusion that the IDEA does not contemplate due process challenges

against a former LEA.

       This conclusion is strained.  As noted above, the plain language of the statutory and

municipal regulations governing the procedures for due process challenges do not bar such

challenges against a former LEA for deficiencies in that LEA's provision of a FAPE.

Furthermore, "[r]eading the IDEA as a whole and not piecemeal," as the defendant urges, Def.'s

Objection at 6, demonstrates that the statute contemplates the potential involvement of both

current and former LEAs in the IEP process and provision of a FAPE.  For example, when

disabled students transfer schools within the same State or outside the State, the IDEA outlines

procedures for implementation of the IEP in the new LEA and requires "the previous school in

which the child was enrolled to take reasonable steps to promptly respond" to requests for the

transmittal of records from the previous school.  20 U.S.C. § 1414(d)(2)(C)(ii).

       Similarly, in the District of Columbia, Municipal Regulations contain express directions

about the involvement of both a former and current LEA in ensuring a FAPE to a disabled child.

For example, when a child with a disability transfers between an LEA Charter school and DCPS,

the regulations require that "the sending LEA [] provide a copy of the child's records to the receiving LEA," D.C. MUN. REGS. tit. 5-E § 3019.5(a); that both the sending and receiving LEAs "shall cooperate fully in the transfer of all child records," *id*. § 3019.5(b); that the "sending LEA shall cooperate fully to ensure all relevant information follows a child to his or her new school," *id*. § 3019.5(c); and that when an LEA Charter does not have available services for an enrolled child's IEP, those services "may be arranged through an agreement with another LEA," *id*. § 3019.7.  Moreover, local regulations also contemplate that a former LEA may continue to have responsibilities to a child who has transferred to a new LEA, and require that a former LEA implement any obligations under a HOD or Settlement Agreement ("SA") even when the child has transferred to a new LEA.  *Id*. § 3019.10(a) ("[T]he new LEA . . . shall cooperate with the LEA bound by the HOD or SA . . . . The responsibility for implementation of the HOD or SA shall remain at all times with the LEA that was a party to the HOD or SA.").  Thus, despite the logistical hurdles cited by the defendant as grounds to limit due process challenges only to a current LEA, the applicable statutory schemes call upon both former and current LEAs to cooperate and overcome them.

Finally, the defendant cites the "stay-put" provision in 20 U.S.C. § 1415(j) in support of its position.  Def.'s Objection at 4.  This provision provides, in pertinent part, that during the pendency of administrative and judicial proceedings, "the child shall remain in the then-current educational placement," unless the parents consent to an alternative placement.  20 U.S.C. § 1415(j).  According to the defendant, "it does not make sense that a complaint filed against a former LEA should require a current LEA to maintain the student's current educational placement," and therefore, this provision supports the defendant's contention that "a complaint can only be filed against the LEA that is currently providing the student with educational placement."  *Id.*  This argument is also specious.

The stay-put provision requiring a student to "remain in the then-current educational placement" or "be placed in the public school program" applies to two situations:  when disputes arise against a current LEA or when parents have applied for initial admission to a public school, respectively.  *See* 20 U.S.C. § 1415(j).  The provision simply does not apply when, as here, a due process challenge is filed against a former LEA where the student is no longer enrolled.  Furthermore, the defendant's use of the stay-put provision as a sword against a disabled student is ironic since this provision was intended to be a shield for a student whom a school district seeks to exclude without making efforts for appropriate changes to an IEP.  *See Honig,* 484 U.S. at 327 (noting that "one of the evils Congress sought to remedy was the unilateral exclusion of disabled children by schools . . . and one of the purposes of [the stay-put provision], therefore, was 'to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.'" (quoting *Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359, 373 (1985))).  Indeed, the defendant's reliance on the stay-put provision in this case could be considered doubly ironic since the defendant did not allow L.R.L. to have a "current educational placement" in DCPS when it designated him to a school that would not enroll him and left the plaintiff to find alternative placement for L.R.L. on her own.  If the plaintiff had not enrolled L.R.L. in another school, the student would have been without a FAPE in any form for the time period required to exhaust the administrative process and obtain an alternative placement from DCPS.  While that *status quo* would have eliminated the current legal quandary posed by L.R.L.'s enrollment in another LEA, it would clearly not have been in the best interests of the child or the parent.

In sum, a plain reading of 20 U.S.C. § 1415(a) and (b)(6) and D.C. Municipal Regulations, Title 5-E § 3029.1, does not support the defendant's argument.  Instead, these statutory provisions make clear that disabled children and their parents are guaranteed the

procedural safeguard of filing a due process complaint against an LEA with whom they dispute

the sufficiency of a FAPE provided by that LEA.  The fact that the student is no longer enrolled

with the LEA is of no consequence.

### B.      The Majority of Courts Permit Due Process Challenges Seeking Compensatory Relief Against Former LEAs

The defendant relies heavily on the reasoning of the U.S. Court of Appeals for the Eighth

Circuit to support its argument that a due process challenge may not be lodged against a former

LEA when the student and his or her parents, as in the instant case, failed to request a due

process hearing before enrolling in a new LEA.  Def.'s Objection at 6 (citing *Thompson v. Bd. of*

*the Special Sch. Dist.*, 144 F.3d 574, 578 (8th Cir. 1998)).  To date, this is the only federal

appellate court to consider this issue.  In *Thompson v. Board of the Special School District*, the

Eighth Circuit held that the time for filing a request for a due process hearing is while the student

remains enrolled in the school district and, "[i]f a student changes school districts and does not

request a due process hearing, his or her right to challenge prior education services is not

preserved."  144 F.3d at 579.  The court reasoned that the purpose of the due process hearing is

"to challenge an aspect of a child's education and to put the school district on notice of a

perceived problem.  Once the school district receives notice, it has the opportunity to address the

problem."  *Id*.  In other words, that court focused on the prospective relief that might result from

the hearing, after the school district was put on notice of problems with its prior handling of a

student and given an opportunity to correct them.[5]  The court did not consider a claim for

---

[5] The defendant also cites *S.N. v. Old Bridge Township. Board of Education*, No. 04-517, 2006 U.S. Dist. LEXIS 83469, at *4 (D.N.J. Nov. 15, 2006), where the parents had initiated administrative proceedings while the student was still enrolled in the defendant school district but moved out of the state while the proceedings were pending. The court determined that the grant of compensatory education would have been impossible since the court could not order the defendant to provide services outside the state.  *Id*.  This case is easily distinguishable since the plaintiff in the instant matter remains a resident of the District of Columbia, where DCPS is the State Educational Agency.  In addition, other federal courts in the District of New Jersey have distinguished or otherwise declined to follow the ruling in *S.N. See, e.g.*, *N.P. v. E. Orange Bd. of Educ.*, No. 06-5130, 2011 U.S. Dist. LEXIS 11171, at *13–14 (D.N.J. Feb. 3, 2011) (finding student's claim for compensatory education against former school district not

compensatory damages cognizable under the IDEA. *Id.* at 580 ("As to compensatory damages, a claim 'based upon defendants' alleged violations of the IDEA may not be pursued in this . . . action because general and punitive damages . . . are not available under IDEA.'" (citing *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996)); *see also M.P. v. Indep. Sch. Dist. No. 721*, 326 F. 3d 975, 979 (8th Cir. 2003) (parents who removed their child from "intolerable situation" at school where he was verbally harassed and physically assaulted by classmates, were barred from bringing IDEA claim against the school since they did not request a due process hearing until after removal).

The Eighth Circuit recently confirmed that a student must "request a due process hearing before transferring from a delinquent district if the student wishes to preserve his or her right to challenge the educational services provided by that district." *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 631, n.6 (8th Cir. 2010). In *C.N.*, an autistic student was subjected to appalling mistreatment by a teacher, prompting the parent to withdraw the student immediately and enroll her in private school for her physical and psychological safety. *C.N.*, 591 F. 3d at 628–29. The Eighth Circuit concluded that the student's IDEA claim failed as a matter of law because she did not request a hearing on her claims until after leaving the public school district. *Id.* at 631. District Courts within the Eighth Circuit have followed this precedent accordingly. *See, e.g.*, *Barron ex rel. D.B. v. South Dakota*, No. 09-4111, 2010 U.S. Dist. LEXIS 105886, at *22 n.3 (D.S.D. Sept. 30, 2010) ("The Court agrees with the Defendants that any claims brought on behalf of student[s] who have left the School for the Deaf and attended another school district after not having requested a due process hearing for alleged violations of the IDEA while they were students at the School for the Deaf have become moot."). A few

---

moot after student moved to adjacent school district); *K.B. v. Haledon Bd. of Educ.*, No. 08-4647, 2009 U.S. Dist. LEXIS 55388, at *13–14 (D.N.J. June 29, 2009) (distinguishing *S.N.* and allowing student to obtain remedy of independent evaluation from former school district).

district courts outside of the Eighth Circuit have also adopted the reasoning of *Thompson* to bar

administrative proceedings against a former school district when those proceedings were

initiated after the student had transferred to a school outside the district.  *See, e.g.*, *Steven H. v.*

*Duval Cnty. Sch. Bd*., No. 3:99-cv-500-J-20TJC, 2001 U.S. Dist. LEXIS 25814, at *12 (M.D.

Fla. May 8, 2001) (holding that the plaintiff must commence the available administrative remedy

of a due process hearing "*while* the student is attending school in the public school district to

ensure that the school district is adequately notified of the alleged problem and given an

opportunity to cure it").

Outside of the Eighth Circuit and a few other district courts, the majority of federal

district courts to consider this issue have concluded that when a student leaves a school district,

which allegedly failed to provide a FAPE, the school district may not avoid its obligations under

the IDEA and must provide a due process hearing to consider the issue of compensatory

education.  Thus, district courts in Georgia, Michigan, California, and Pennsylvania have

permitted complaints to be filed against a school district even if the student is no longer enrolled.

*See D.H. v. Lowndes Cnty. Sch. Dist.*, No. 7:11-CV-55, 2011 U.S. Dist. LEXIS 101805, at *8

(M.D. Ga. Sept. 9, 2011) ("Disabled students are guaranteed an appropriate public school

education, and if a school fails to provide this education, IDEA enables these students to be

compensated for the lack of educational opportunities.  The opportunity to recover for a school

district's violations should not be limited to the time when the student is enrolled in the school

district."); *Alexis R. v. High Tech Middle Media Arts Sch.*, No. 07cv830 BTM (WMc), 2009 U.S.

Dist. LEXIS 67078, at *21 (S.D. Cal. Aug. 3, 2009) (noting that a student's claim is

"procedurally cognizable to the extent that she seeks services or reimbursement as a remedy" and

that "compensatory education services may be an appropriate remedy even though [plaintiff] is

no longer a student in Defendants' schools" and did not bring the claim until leaving the school

19

district); *Grand Rapids Pub. Sch. v. P.C. & T.C. ex rel. D.C.*, 308 F. Supp. 2d 815, 817–18

(W.D. Mich. 2004) (allowing a student to bring a claim after changing districts because of the

remedial intent of IDEA); *Lewis Cass Intermediate Sch. Dist. v. M.K. ex rel. J.K.*, 290 F. Supp.

2d 832, 838 (W.D. Mich. 2003) (noting "that while a school district typically has no continuing

obligation to provide FAPE to the child of a parent who has moved out of the district, a school

district nonetheless may be required to compensate a student for any IDEA violations that

occurred before the move," and finding that there is "no reason that a district court should deny a

student his right to a due process hearing regarding compensatory educational services simply

because the student requested his hearing after, rather than prior to, moving from the district");

*Neshaminy Sch. Dist. v. Karla B. ex rel. Blake B.*, No. 96-3865, 1997 U.S. Dist. LEXIS 3849, at

*13–18 (E.D. Pa. Mar. 20, 1997) (permitting a student's claim for compensatory relief to move

forward, even though he moved out of defendant school district before filing his request for a

due process hearing).

 In *Neshaminy School District,* the plaintiff school district (equivalent to an LEA in the

instant case) sought summary judgment on the grounds that, *inter alia*, the defendant student's

claims alleging IDEA violations were moot because the student had changed districts when she

had transferred to a different school.  1997 U.S. Dist. LEXIS 3849, at *5–6.  The plaintiff school

district argued that it was no longer under an obligation to provide the student with a FAPE or

compensatory education.  *Id.* at *13–14.  The court found this argument to be unavailing, stating

that "[i]n order to effectuate a disabled student's right to a FAPE . . . compensatory education

must be available for a student who has moved from the school district after he has already been

deprived of a FAPE."  *Id.* at *15. Otherwise, the court explained,

> a school district could simply stop providing required services to a student
> with the underlying motive of inducing this student to move from the district,
> thus removing any future obligation under IDEA which the district may owe

to the student.  Such a result would frustrate the purposes of IDEA in that a
student would be denied his right to a FAPE.  Surely, Congress, in creating
and ensuring a disabled student's right to public education, would not allow a
school district to suspend the educational rights of a disabled child without a
remedy.

*Id.* at \*16; *accord Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*, 583 F.

Supp. 2d 169, 172 & n.3 (D.D.C. 2008) (rejecting former school's argument that it was not

responsible for a new evaluation, stating "[i]f the Court decided that a school was not required to

pay for a new evaluation of a student, who may have been deprived of a FAPE, because a few

years had passed since the student was enrolled in that school, the right to a compensatory

education becomes meaningless" (citing *Neshaminy*, 1997 WL 137197, at \*6)).

The reasoning of and policy argument advanced by the *Neshaminy* court are persuasive,

and this Court will therefore follow the majority view on this issue.  If an LEA's IDEA

obligations were extinguished upon a student leaving the LEA, parents would be placed in the

untenable situation of choosing between the lesser of two evils:  either leaving their child in an

unsatisfactory situation while waiting for a lengthy administrative appeals process to play out in

order to preserve their right to compensatory education as a remedy, or remedying the situation

immediately by moving the child to a new LEA while forfeiting any right they had to an

administrative review and any subsequent compensatory education.  The Court is not prepared to

place that burden on parents.  Similar to the defendant student and parents in *Neshaminy*, L.R.L.

and his mother "have a concrete interest in seeking to redress an injury which they suffered in

the past." *Neshaminy*, 1997 U.S. Dist. LEXIS 3849, at \*17.  L.R.L and his mother "merely seek

to . . . redress their alleged injury which arose when [the school district] allegedly violated [the

child]'s right to a FAPE at a time when [the school district] was required under the law to

provide [the child] with a FAPE." *Id.*

The Court finds the defendant's counter policy argument unavailing.  The defendant argues that "[a]llowing such a claim to proceed would permit the current LEA to avoid its statutory responsibility to provide the student a FAPE."  Def.'s Objection at 7.  In support of this argument, the defendant states that the "[p]laintiff in this case has plainly alleged that the current LEA is not providing FAPE to the student, but attempts to blame that failure on the student's former LEA, DCPS."  *Id.* at 8.  This contention is a last-gasp effort to divert attention from the allegations against the defendant to possible claims that the plaintiff might have, but has not, asserted against the current LEA.  This diversion will not work.  The plaintiff has not alleged an IDEA violation against its current LEA, CAPCS, and this Court will not evaluate claims that have not been made.

The Court holds that a disabled student and his parent cannot be denied an IDEA-mandated administrative review of his due process claim seeking compensatory relief for denial of a FAPE by a former LEA, which is responsible for the alleged failures.  Thus, the plaintiff's due process complaint against the defendant, which allegedly provided a deficient IEP and educational placement for her disabled child in the 2009–2010 school year, is cognizable under the IDEA and applicable D.C. Municipal Regulations, even though the plaintiff did not file the complaint until after she had already enrolled the child in the current LEA.  No determination has been made about L.R.L.'s substantive claims:  namely, whether L.R.L. was denied a FAPE due to the defendant's failure to fulfill its Child Find obligations; to timely, fully, and comprehensively evaluate him in all areas of his disability; to develop an appropriate IEP for the relevant school year; and to provide an appropriate and educational placement.  Making those determinations, in the first instance, is the job of a Hearing Officer during the administrative proceedings.

**IV.    CONCLUSION**

For the foregoing reasons, the defendant's objections to the Magistrate Judge's Report and Recommendation are OVERRULED.  Upon consideration of the Magistrate Judge's Report and Recommendation and the record of the case, the Court adopts the Magistrate Judge's Report and Recommendation.  The plaintiffs' Motion for Summary Judgment, ECF No. 12, is GRANTED; the defendant's Cross-Motion for Summary Judgment, ECF No. 14, is DENIED; and this case is remanded for a prompt due process hearing before an IDEA Hearing Officer.

An appropriate Order accompanies this Memorandum Opinion.

DATE:   October 9, 2012

/s/ *Beryl A. Howell*

BERYL A. HOWELL
United States District Judge